IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01055-MSK-KLM

PRISON LEGAL NEWS,

    Plaintiff,

v.

EXECUTIVE OFFICE FOR UNITED STATES
ATTORNEYS,

    Defendant.

## PRISON LEGAL NEWS'S MOTION FOR SUMMARY JUDGMENT

**COMES NOW** Plaintiff Prison Legal News (PLN), which, pursuant to Fed. R. Civ. P. 56, moves for summary judgment on its claims for an injunction ordering the Executive Office for United States Attorneys (EOUSA) to produce to PLN the records requested in FOIA Request No. 07-903 and a declaration that EOUSA's denial of PLN's FOIA Request No. 07-903 was improper. *See* Complaint for Declaratory and Injunctive Relief (Docket # 1).

### CLAIMS AND DEFENSES UPON WHICH JUDGMENT IS SOUGHT

**A.    Plaintiff is entitled to Summary Judgment on its Claim for Injunctive Relief.**

1.    <u>Burden of proof and elements</u>

The Freedom of Information Act (FOIA) "was designed 'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *U.S.*

*Dep't of State v. Ray*, 502 U.S. 164, 174 (1991).  "Consistently with this purpose, as well as the plain language of the Act, the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents."  *Id.*; *see also* 5 U.S.C. § 552(a)(4)(B).   Thus, the burden is on Defendant EOUSA to prove that the records that are the subject of FOIA Request No. 07-903 ("the FOIA request") were properly withheld.  Given the undisputed facts of this case, including Defendant's previous repeated disclosures to the public of the records that are the subject of the FOIA request, as well as the strong public interests at stake that support production of the records, Defendant cannot meet this burden.

The FOIA disclosure requirements are subject to several specific statutory exemptions, which are to be narrowly construed.  *Anderson v. Department of Health and Human Servs.*, 907 F.2d 936, 941 (10th Cir. 1990).  Defendant EOUSA asserts that it relies upon the following two statutory exemptions in justifying its denial of the FOIA request:

> 5 U.S.C. § 552(b)(6):
>
>> personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.
>
> 5 U.S.C. § 552(b)(7)(C):
>
>> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy.

    2.    <u>Defenses that cannot be proven by Defendant</u>.

        a.    Defendant EOUSA has waived any reliance on Exemption 6 and should be procedurally defaulted from relying on that Exemption.

Defendant did not raise Exemption 6 in its initial response to Prison Legal News denying the FOIA request. *Declaration of Paul Wright in Support of Prison Legal News's Motion for Summary Judgment*, attached hereto as Exhibit 3, ¶ 3, & Ex. 3-A. Nor did Defendant raise Exemption 6 in its denial of Prison Legal News's administrative appeal of that response. Exhibit 3, ¶ 4, & Ex. 3-B. Nor did Defendant raise Exemption 6 as an affirmative defense when it filed its Answer in this case. (Docket # 9, p. 5 ("Defenses")). It is only after it became clear that Defendant had to abandon as meritless numerous other exemptions it had previously raised that Defendant first asserted Exemption 6. (Joint Status Report (Docket #12).) Defendant should have raised this Exemption earlier, at least by the time it filed its Answer, and has thus waived any ability to rely on this Exemption. Fed. R. Civ. P. 12(b).

        b.    Defendant EOUSA has waived any ability to rely upon either Exemption 6 or Exemption 7(C) because it placed the requested materials in the public domain.

It is undisputed that the records that are the subject of the FOIA request were displayed on courtroom monitors whose sole purpose was to render them visible to the public audiences at the respective federal capital trials of William and Rudy Sablan. (#1, ¶¶ 33, 37, 50; #9, ¶¶ 33, 37, 50.) Once those trial disclosures to the public occurred, the

records became part of the public domain, and the government is precluded from now attempting to shield them in secrecy. *Cottone v. Reno*, 193 F.3d 550, 554-56 (D.C. Cir. 1999) (holding that wiretapping recordings that were played in open court have entered the public domain and can no longer be immunized from disclosure under a statutory FOIA exemption); *see also Anderson*, 907 F.2d at 952 ("Because materials such as these appear to be in the public domain, no meritorious claim of confidentiality can be made.") (referring, in FOIA case, to articles and a letter to the editor published in journals). "[A] trial is a public event, and what transpires in the court room is public property." *Cottone*, 193 F.3d at 554 (quoting *In re National Broadcasting Co.*, 653 F.2d 609, 614 (D.C. Cir. 1981)); *cf. Cooper v. Internal Revenue Serv.*, 450 F. Supp. 752, 754-55 (D.D.C. 1977) (noting that when confidential tax documents were released to the Tax Court, "their status was undeniably changed.").

Additionally, Defendant can offer no legal justification why those persons unable to physically attend the two Sablan trials should be restricted from seeing the unsealed exhibits introduced at those public trials, especially when the exhibits are in a form that readily permits reproduction. *United States v. Pageau*, 535 F. Supp. 1031, 1033 (N.D.N.Y. 1982) (denying request by correctional officers for a court order preventing dissemination of videotape showing portion of alleged assault on state prison inmate, where the public and the press had viewed the entire recording when it was displayed on several monitors in the courtroom during a pretrial hearing).

4

      c.      Defendant EOUSA cannot meet its burden of proving Exemption 6.

            i.      Defendant EOUSA cannot meet its burden of proving an invasion of personal privacy interests, which is a necessary predicate to the application of Exemption 6.

The only privacy interests that Defendant asserts are implicated here are those of the family of deceased inmate Joey Estrella. Such privacy interests necessarily derive from the privacy interests of the decedent, and thus can be no broader than such interests. The law is clear that as a prison inmate, Estrella had no right to privacy in the interior of his prison cell, however. *Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984) ("[W]e hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.") Therefore, the Estrella family can have no derivative privacy interest in the videotaped images of Estrella's body inside the cell, nor of any autopsy photographs that were taken of Estrella's body while it was inside the cell. Thus, the application of the Exemption fails at this early threshold stage of the analysis, because there is no privacy interest.

In any event, any privacy interests that could conceivably be implicated by the disclosure of these records were lost or extinguished when the government chose to introduce the records as unsealed exhibits, not once, but twice, in open court proceedings. Under recent Tenth Circuit precedent, disclosure of records or information that are

5

already part of the public record "would not invade the [person]'s privacy at all, much less constitute a 'clearly unwarranted invasion of personal privacy.'" *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1234 (10th Cir. 2007) (holding that such records are not protected by Exemption 6).

        ii.    Defendant EOUSA cannot meet its burden of proving that disclosure of the records "would constitute a clearly unwarranted invasion of personal privacy" for purposes of Exemption 6.

Even should the Court find that some minimal privacy interest on the part of the Estrella family exists in the records, Defendant still cannot meet its burden of proving the application of Exemption 6. "To determine whether a requested disclosure 'would constitute a clearly unwarranted invasion of personal privacy,' the Court balances the public interest in disclosure against the privacy interest Congress intended the exemption to protect." *Martinez v. Social Security Administration*, Nos. 07-cv-01156-MSK-BNB, 07-cv-01553-MSK-BNB, 2007 WL 4573749, at *3 (D. Colo. Dec. 21, 2007). "Public interest refers to the core purpose of the FOIA, namely, to contribute to public understanding of the operations or activities of the government . . . " *Id.*

Here, there are numerous significant public interests that are implicated by Defendant's refusal to produce the requested records.

The public has a strong interest in being informed about the government's performance of its constitutional and statutory duties. The Bureau of Prisons (BOP) has a constitutional duty "to protect prisoners from violence at the hands of other prisoners."

*Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  "The deliberate indifference of a prison official 'to a substantial risk of serious harm to an inmate violates the Eighth Amendment.'"  *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003).  The BOP also has the statutory duties to "provide suitable quarters and provide for the safekeeping [and] care . . . of all persons charged with or convicted of offenses against the United States."  18 U.S.C. § 4042(a)(2).

It is undisputed that Estrella was a federal inmate at USP Florence, a high-security BOP facility, when he was murdered in the prison cell where he had been housed with two other inmates.  (Docket # 1 at ¶¶ 5, 6, & 7; Docket # 9 at ¶¶ 5, 6, & 7.)  It is undisputed that the videotape that is the subject of the FOIA request shows William Sablan mutilating Estrella's body and purporting to drink Estrella's blood.  (Docket # 1 at ¶¶ 14 & 15; Docket # 9 at ¶¶ 14 & 15.)  These facts raise valid and important concerns that the BOP was negligent in carrying out its constitutional and statutory duties to protect Estrella from being murdered and mutilated by one or more of his cellmates and to provide suitable living quarters for Estrella and the Sablans.  Although such concerns are not necessary to justify disclosure under FOIA, they provide useful context for the weighing analysis required for application of Exemption 6.

Henry Schuster, a producer at 60 Minutes, CBS's weekly television news magazine show, recently produced a 60 Minutes segment on an adjacent BOP facility in Florence, Colorado:  the U.S. Administrative Maximum or ADX facility.  That segment

7

"was seen by millions of Americans and generated a strong reaction, indicating that there is a great deal of public interest in conditions inside federal prisons." *Declaration of Henry Schuster in Support of Prison Legal News's Motion for Summary Judgment*, attached hereto as Exhibit 1, at ¶ 2. Mr. Schuster believes the Estrella murder "raises issues that are important to the public interest" given that it occurred at what is presumably one of the best secured facilities in the U.S., and he believes that "[a]ccess to the videotape showing the aftermath of the Estrella murder would help journalists and the public scrutinize the workings of the Bureau of Prisons and its facility at USP Florence." Exhibit 1, at ¶ 4. Mr. Schuster further explains the communicative power of video images and opines that "to some extent, videotape allows the public to form their own opinions based on the raw data, unmediated by a journalist." Exhibit 1, at ¶ 5. In Mr. Schuster's view, access to the records requested in the FOIA request would help inform the public about the small size of the cell where Estrella was murdered, the issue of whether the Sablans were intoxicated at the time of the murder, and the workings of the BOP with regard to BOP staff's removal of the Sablans from their cell following Estrella's murder. Exhibit 1, at ¶ 6. Mr. Schuster further notes that "[f]ederal capital prosecutions are necessarily expensive, and journalists and the public have an interest in accessing information that would shed light on the circumstances underlying the government's decision to pursue the death penalty against William and Rudy Sablan." Exhibit 1, at ¶ 7.

      Similarly, Alan Prendergast, a staff writer at Westword who has covered the

8

Estrella murder, identifies a number of areas of public interest in the circumstances surrounding the murder and its aftermath, including: (i) the high level of alcohol found in Estrella's body; (ii) the presence of three inmates in a cell designed to hold one (as well as the fact that two of the inmates were related to each other and had a history of assaulting other prisoners); (iii) the sharp weapon used to remove organs from the victim's body; and (iv) the apparent lack of timely supervision that allowed this evisceration to take place. *Declaration of Alan Prendergast in Support of Prison Legal News's Motion for Summary Judgment*, attached hereto as Exhibit 2, at ¶ 2. Mr. Prendergast opines that the records that are the subject of the FOIA request could provide the public with insight into whether the Sablans were intoxicated and answer unresolved questions "about how inmates in the most secure unit of one of the highest security prisons in the federal system obtained the weaponry, opportunity, intoxicants, leisure, and will to commit such a gruesome crime." Exhibit 2, at ¶ 15. Mr. Prendergast's *Declaration* also details other public interests in accessing the records. Exhibit 2, at ¶¶ 7, 8, 10-14, 16-17.

Finally, Paul Wright, the editor of Plaintiff Prison Legal News, has submitted a Declaration listing the various public interests that he sees in the production of the requested materials. Exhibit 3, at ¶¶ 6-14. In addition to the interests addressed by Mssrs. Schuster and Prendergast, Mr. Wright notes the public interest "in being completely and correctly informed about the circumstances surrounding the Estrella murder and its aftermath." Exhibit 3, at ¶ 15. As Mr. Wright explains, "[a]llowing

9

journalists and the public to view the videotape and autopsy photos themselves could help dispel any unfounded rumors or incorrect speculations" about what occurred during the gruesome aftermath of the murder.  Exhibit 3, at ¶ 15.

These numerous, significant public interests in the production of the records demonstrate that any possible invasion of the Estrella family's privacy rights that the Court may find would not be "clearly unwarranted," as required for application of Exemption 6.  Therefore, the government cannot meet its burden of proving its reliance on Exemption 6 to avoid producing the Sablan exhibits that are the subject of the FOIA request.

            d.      Defendant EOUSA cannot meet its burden of proving Exemption 7(C).

The wording of Exemption 7(C) is slightly different from the wording of Exemption 6, but both exemptions require, at a minimum:  (i) an invasion of personal privacy; (ii) that is *unwarranted*.  *Compare* 5 U.S.C. § 552(b)(6) (". . . the disclosure of which would constitute a clearly unwarranted invasion of personal privacy") *with* 5 U.S.C. § 552(b)(7)(C) ("to the extent that the production of such . . . records or information . . . counsel reasonably be expected to constitute an unwarranted invasion of personal privacy.").  To avoid redundancy, counsel hereby respectfully incorporates the arguments made in sections A.2.c.(i) & (ii) of this *Motion* as support for Plaintiff's analogous arguments that Defendant cannot meet its burden under Exemption 7(C) of proving an invasion of personal privacy interests and that production of the records

10

"could reasonably be expected to constitute an *unwarranted* invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C) (emphasis added.)

Prison Legal News acknowledges that for purposes of Exemption 7(C), the Supreme Court has held "that FOIA recognizes surviving family members' right to personal privacy with respect to their close relative's death-scene images." *National Archives and Records Administration v. Favish*, 541 U.S. 157, 170 (2003) (so recognizing with respect to FOIA request for photographs of the body of Vincent Foster, Jr., deputy counsel to President Clinton, who allegedly committed suicide).  However, counsel is not aware of any authority holding that the family members of a prisoner have a cognizable privacy interest in video footage and photographs of the prisoner's body inside his prison cell that have been twice disclosed to the public in public court proceedings.  Moreover, the numerous, significant public interests in the production of the records discussed in section A.2.c.(ii) of this *Motion* and detailed in the attached declarations from representatives of the media demonstrate that any possible invasion of the Estrella family's privacy rights that the Court may find would not be "unwarranted," as required for application of Exemption 7(C).  Therefore, the government cannot meet its burden of proving its reliance on Exemption 7(C) to avoid producing the Sablan exhibits that are the subject of the FOIA request.

### B. Plaintiff is entitled to Summary Judgment on its Claim for Declaratory Relief.

1. <u>Burden of proof and elements</u>.

This Court has the discretion to declare the rights and other legal relations of any party seeking such declaration. 28 U.S.C. § 2201(a). The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. Fed. R. Civ. P. 57. This claim necessarily dovetails with Plaintiff's claim for injunctive relief. Therefore, it is Defendant's burden to show the applicability of one of the FOIA exemptions it currently relies upon. Should the Court grant Prison Legal News summary judgment on its claim for an injunction requiring Defendant to produce the Sablan exhibits that are the subject of the FOIA request, then Prison Legal News respectfully reiterates its request that this Court also issue a declaration that these materials have been improperly withheld by Defendant.

### CONCLUSION

For the foregoing reasons, Plaintiff Prison Legal News is entitled to summary judgment on its claims for injunctive and declaratory relief. The undisputed facts demonstrate that Defendants cannot meet their burden of proving the applicability of either Exemption 6 or Exemption 7(C) to the FOIA's broad mandate for disclosure of agency records.

DATED:   November 21, 2008

                                            JOHNSON & BRENNAN

                                             /s/ Gail K. Johnson
                                            Gail K. Johnson
                                            1401 Walnut Street, Suite 201
                                            Boulder, CO 80302
                                            Telephone: (720) 961-3301
                                            Facsimile:  (866) 340-8286
                                            gjohnson@johnson-brennan.com