IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01055-MSK-KLM

PRISON LEGAL NEWS,

    Plaintiff,

v.

EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS,

    Defendant.

---

**DECLARATION OF HENRY SCHUSTER IN SUPPORT OF
PRISON LEGAL NEWS'S MOTION FOR SUMMARY JUDGMENT**

---

I, Henry Schuster, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. Since January 2007, I have worked as a Producer for CBS's Sunday evening television magazine show, 60 Minutes. For twenty-five years prior to that, I was at CNN, most recently as Senior Investigative Producer. I am the co-author of a nonfiction book, <u>Hunting Eric Rudolph: An Insider's Account of the Five-Year Search for the Olympic Bomber</u> (Berkley, 2005). I have covered a number of court cases in my career as a television producer, including federal criminal cases.

2. In October 2007, 60 Minutes aired a segment I produced about the federal "Supermax" prison in Florence, Colorado, U.S. Administrative Maximum (ADX), titled "A Clean Version of Hell." This segment took many months of investigative and production work on the part of me and my colleagues. Although the murder of federal inmate Joey Estrella by William and Rudy Sablan occurred in USP Florence and not at ADX, the Sablans were

**Exhibit 1**

transferred to ADX after the Estrella murder, and thus I paid particular attention to their federal criminal cases because of my work on ADX. Our segment on ADX included the first-ever footage from inside the prison since it opened. This was seen by millions of Americans and generated a strong reaction, indicating that there is a great deal of public interest in conditions inside federal prisons.

3.  As a television journalist, I have a continuing interest which, as noted, I believe is shared by the public in the operations of, conditions at, and events occurring in the Bureau of Prisons' maximum and high security prisons such as ADX and USP Florence. I am aware, for example, that two inmates were killed by guards at USP Florence earlier this year.

4.  I believe the Estrella murder raises issues that are important to the public interest. When a murder can be committed in a cell within a prison such as USP Florence that is supposed to be a high-security federal facility – presumably one of the best secured facilities in the U.S. – that is a matter of significant public concern. Access to the videotape showing the aftermath of the Estrella murder would help journalists and the public scrutinize the workings of the Bureau of Prisons and its facility at USP Florence.

5.  As a long-time producer of television news, I am keenly aware of the differences between communicating information in writing and communicating information via televised video images. Based on my lengthy experience in the television news industry, it is my opinion that there simply is no substitute for the power of video footage. For example, 60 Minutes recently obtained and aired video footage of a mentally ill inmate in a Michigan state prison who was placed in physical restraints over a period of time in his bed before he died. That segment, too, generated strong reaction. Of course journalists can write about something like that, but

being able to show the public actual videotaped footage is completely different and vastly superior. Indeed, to some extent, videotape allows the public to form their own opinions based on the raw data, unmediated by a journalist.

6.     In my opinion, there are many ways in which release of the videotape of the Estrella murder scene and the Sablans' conduct following the murder would help inform the public about the operations of the BOP. The crowded nature of the small cell would be best communicated via videotape. Whether William and/or Rudy Sablan were intoxicated at the time of the murder is also something that could be informed by scrutiny of the video of their conduct soon after the killing. The videotaped images of the cell extraction of the Sablans by BOP staff would also inform the public about the workings of the BOP.

7.     In my opinion, the release of this videotape and the Estrella autopsy photographs would also inform the public about the federal government's decision to seek the death penalty (unsuccessfully) against William and Rudy Sablan. Federal capital prosecutions are necessarily expensive, and journalists and the public have an interest in accessing information that would shed light on the circumstances underlying the government's decision to pursue the death penalty against William and Rudy Sablan.

8.     In my extensive experience as a television news journalist, once something has been shown or played in open court, it is routinely released to the media. This has been true even in cases that involve national security. For example, in 2002, I covered a RICO trial in Charlotte, North Carolina against alleged members of Hezbollah involving allegations of tobacco smuggling and terrorism. There, the government showed footage of the tobacco smuggling and played videos obtained from the defendants; once these were played in open court, they were

released to the media. Similarly, in 2005, an American citizen named Hamid Hayat was interrogated by the FBI after his return from Pakistan, and the interrogation sessions were recorded. Mr. Hayat was tried in federal court in California on charges of providing material support for terrorism and making false statements to federal agents. Portions of the 2005 interrogation were played in court, and the tapes were entered into the record in that case. The Court made sure that the entire set of interrogations was released to the news media. The U.S. Attorney's Office made no objection to that release, to my knowledge, and in fact assisted in the release of the material. The release of the Hayat interrogation tapes also illustrates the principle that the value of media access to primary materials extends beyond the potential to broadcast and publish those materials; it was important for my team (I was then employed by CNN) to have access to the Hayat interrogation tapes when we subsequently interviewed Hayat's family members in Pakistan. Similarly here, I believe the release of the records sought by Prison Legal News in this case could be important not just for the educative value presented by the prospect of broadcasting and publishing the materials themselves but also to allow journalists to do a better job crafting and executing their investigative reporting regarding violence within BOP facilities.

9. Another example that comes to mind is the recent federal criminal trial of Senator Ted Stevens. In that case, once the wiretap recordings were played in open court in Senator Stevens's trial, they were released to the media within hours.

10. Based on my knowledge of these and other cases, I believe that the government's position in refusing to produce materials shown in open court during the Sablan trials to be an inexplicable and disappointing departure from standard practice. Indeed, I am surprised that the government would take this position when it has voluntarily released analogous materials shown

or played in open court in cases involving matters of national security. In my opinion, the government's assertion of the privacy interests of the Estrella family as grounds for declining to produce the requested materials is unfounded. The government apparently seeks exemption from disclosure in every case involving a criminal act, which would be an exemption from disclosure that is breathtaking in scope and unprecedented in practice, in my opinion and experience.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: November 19, 2008

                                              /s/ Henry Shuster
                                              Henry Schuster
                                              Producer, 60 Minutes, CBS